OPINION OF THE COURT
Jones, J.
A union does not violate its duty of fair representation when it settles an appeal from an order confirming an arbitration award by agreeing to surrender or to diminution of benefits awarded in arbitration to some employees in exchange for benefits to other employees not affected by the original award, in the absence of arbitrary, discriminatory or bad-faith conduct by the union. In the circumstances of this case, the Appellate Division did not err in its determination that the Union did not engage in such conduct.
The somewhat complex procedural context out of which this appeal reaches us is fully described in the opinion of Justice Samuel J. Silverman at the Appellate Division (99 AD2d 264). For the purposes of this appeal it suffices to note that the present controversy began when the City of New York in March 1975 *193 appointed at least one attorney, who had previously been employed as a provisional attorney, to the position of associate attorney and paid him a salary of $23,950,[1] $3,000 higher than the stated minimum salary for that position. On September 12, 1975, the Civil Service Bar Association (Union), which is the exclusive bargaining representative for City employees holding civil service positions known as “attorney classifications”, filed a “group” grievance on behalf of . all attorneys affected without naming any specific attorney. The basis for the grievance was the claim that the appointment of the one attorney at a salary of $23,950 constituted a unilateral change by the City in the minimum salary for the position of associate attorney, thereby triggering an asserted requirement under the collective bargaining agreement that the minimum salaries of all grades be raised correspondingly. After the grievance had been denied in all stages, the Union took the matter to arbitration. The City’s contention that the matter was inarbitrable was rejected by the Board of Collective Bargaining, and the grievance proceeded to arbitration. The arbitrator ruled in favor of the Union and ordered the City to increase all minimum salaries to the highest amount by which any employee’s original salary exceeded the minimum and awarded back pay from July 25, 1974.
This award was confirmed, on motion of the Union and over opposition by the City, in a judgment entered September 19, 1977 (the so-called “Helman judgment”). The City filed a notice of appeal to the Appellate Division. While the appeal was pending, apparently due to lack of confidence on both sides with respect to the outcome of the appeal, settlement negotiations ensued between the City and the Union. The former arbitrator apparently participated in the settlement discussions as did a mediator requested from the Office of Collective Bargaining. As a result, the parties reached an agreement by which all employees in three attorney titles who were on the City’s payroll on January 6, 1977 and remained on the payroll at the time of or retired prior to the ratification and acceptance of the settlement would receive a lump-sum payment of $2,000, the contractual minimum and maximum salaries for the titles would be increased by $2,500, and the pending collective bargaining for a new contract would be based on these increased salaries.
The settlement was approved by the Union’s board of directors on December 1, 1977 by a 17 to 4 vote and by the Union membership by a vote of 190 to 60 at a December 13, 1977 *194 general meeting from which former Union members were excluded in accordance with express provision of the Union bylaws. At the request of the parties the former arbitrator thereupon issued a so-called “Final Supplemental Award” which embodied the substance of their settlement. By judgment entered December 20, 1977 (the so-called “Korn judgment”), Supreme Court vacated the Helman judgment and confirmed the settlement.
Thereafter, by notice of motion dated February 2, 1978, a group of present and former employees sought to intervene in the action and to set aside the Korn judgment and the “Final Supplemental Award” on which it was based. These employees claimed that they had received more favorable benefits under the original award in arbitration than they would under the settlement and that some of them, having resigned, would receive nothing under the terms of the settlement. Supreme Court denied the application to intervene by order entered March 24, 1978, essentially on the ground that the would-be intervenors had not shown sufficient justification for intervention. The Appellate Division reversed, holding that sufficient ground had been shown for intervention, and remanded the case for a hearing on the factual issues raised by intervenors’ application under CPLR 5015 (subd [a], par 3) to vacate the Korn judgment and the “Final Supplemental Award” on the ground of “fraud, misrepresentation, or other misconduct” based on assertions that the Union had breached its duty of fair representation when the settlement was negotiated (64 AD2d 594).
On remand, Supreme Court vacated the “Final Supplemental Award”, holding that the former arbitrator lacked jurisdiction under principles of functus officio, and consequently set aside the Korn judgment based on that award under CPLR 5015 (su bd [a], par 5). As well, the court reinstated the Helman judgment which had confirmed the original arbitration award. On appeal by the City of New York, the Appellate Division reversed and denied the intervenors’ CPLR 5015 vacatur motion, holding that the Union did not violate its duty of fair representation (99 AD2d 264). We affirm.
As a threshold matter, we note that it was error on the part of Supreme Court in the circumstances of this case to invoke the doctrine of functus officio as a basis, under CPLR 5015 (subd [a], par 4), for vacatur of the “Final Supplemental Award” and the stipulation of settlement incorporating the provisions thereof, and, under CPLR 5015 (subd [a], par 5), for vacatur of the *195 judgment of Supreme Court confirming that settlement.[2] The former arbitrator in participating at the request of the parties in the formulation of their settlement was not acting qua arbitrator in either a continuing or new arbitration proceeding; he was acting rather as an impartial mediator, with the consent of the City and the Union, to assist them to a settlement of pending litigation on appeal. That the form of his participation and of the subsequent proceedings may have been cast as in arbitration for purposes of circumventing the restrictions and control of the Emergency Financial Control Board, as Justice Silverman noted (99 AD2d, pp 269-270), is of no moment in this litigation. As the case came before the courts below and as the appeal now reaches us, the judgment sought to be vacated must be treated as one entered in implementation of a settlement between the City and the Union in the course of appellate litigation between them. It is not properly to be characterized as a judgment confirming an award in arbitration.[3]
We turn then to the principal argument on which intervenors rely for reversal. They argue that the Union violated its duty of fair representation of their interests in negotiating the settlement of the appeal from the Helman judgment which had confirmed the arbitration award which benefited them. The duty of fair representation had its genesis under Federal law in the Supreme Court’s opinions in Steele v Louisville & Nashville R.R. Co. (323 US 192) and Tunstall v Brotherhood of Locomotive *196 Firemen & Enginemen (323 US 210). In those cases, the court held that a union is obligated to act “fairly” toward all employees it represents stemming from its statutory authority and responsibility as their exclusive bargaining representative. In Vaca v Sipes (386 US 171, 190), the court established the standard for determining when the duty of fair representation is violated. According to the court, such a breach “occurs ordy when a union’s conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith” (id.; see, also, Hines v Anchor Motor Frgt., 424 US 554, 568-569; Humphrey v Moore, 375 US 335, 349-350; Ford Motor Co. v Huffman, 345 US 330, 337-339).
Although the State and its political subdivisions are excluded from the definition of “employer” contained in subdivision (2) of section 2 of the National Labor Relations Act (29 USC § 152 [2]), the courts in New York have recognized a similar duty of fair representation on the part of public sector unions predicated on their role as exclusive bargaining representatives (e.g., Gosper v Fancher, 49 AD2d 674, affd 40 NY2d 867, cert den 430 US 915; Menkes v City of New York, 91 AD2d 654, 655; De Cherro v Civil Serv. Employees Assn., 60 AD2d 743; Jackson v Regional Tr. Serv., 54 AD2d 305).
Ascertaining whether, in any particular instance, the duty of fair representation has been violated is essentially a factual determination (cf. Smith v Hussmann Refrig. Co., 619 F2d 1229, 1236 [en banc], reh den 619 F2d 1253, cert den 449 US 839; Griffin v International Union, UAAAIWA, 469 F2d 181, 182). Here, the Appellate Division found that there was “no reason to believe that the Union did not act honestly and in good faith.” (99 AD2d, p 273.) The court also held that “[i]t was not unfair to use the original award as a lever, or a club, to obtain for all the members of the Union a more equal benefit.” (Id.) Both the Ci ty and the Union were unsure of their chances of success on the appeal, and both sides were dissatisfied with the compression of salaries between the minimum and maximum salary rates which the original award created, as well as with the prospect of practical difficulties which might be encountered in implementation of the award and with the possible effect the award might have on pending collective bargaining for a new contract. There being support in the record for these findings, there was no err or of law in the determination by the Appellate Division that the Union did not violate its duty of fair representation in the circumstances of this case.
The intervenors contend that the settlement violated the Union’s duty of fair representation because it could not, under *197 any circumstances, agree to surrender or to diminution of “rights” intervenors claim to have acquired under the initial arbitration award in exchange for benefits to other Union members who would not have been affected by the original award. In the intervenors’ view, once the award was confirmed any settlement could only benefit those employees who would have benefited from the award. This argument assumes that the employees gained indefeasible contract rights in consequence of the confirmation of the initial arbitration award. The viability on appeal of the confirmation of the award, however, was much in question, and both sides had reason to believe that it might not be upheld. It was not arbitrary, therefore, for the Union, in settling the appeal, to agree to a reduction in the back pay and increased salary to be paid to the affected employees and to an elimination of lump-sum payments to those who had resigned before the settlement was ratified. Moreover, as found by the Appellate Division, in light of the uncertainty which surrounded the claim that gave rise to the grievance, denying benefits to these employees in consequence of the settlement “did not defeat any reasonable expectations that they had before the grievance was instituted.” (99 AD2d, p 273.)
That the maximum salary was increased as a result of the settlement, benefiting employees who would not have been affected by the original award, does not render the settlement arbitrary as a matter of law.. Unions must have leeway to resolve their obligations to employees who have conflicting interests. As stated by the Supreme Court: “Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes.” (Humphrey v Moore, 375 US 335, 349-350, supra.) Where the union undertakes a good-faith balancing of the divergent interests of its membership and chooses to forgo benefits which may be gained for one class of employees in exchange for benefits to other employees, such accommodation does not, of necessity, violate the union’s duty of fair representation (cf. Local 13, Int. Longshoremen’s & Warehousemen’s Union v Pacific Mar. Assn., 441 F2d 1061,1067; Maurer v International Union, UAAAIWA, 105 LRRM 2883 [US Dist Ct — Pa]).[4] A *198 union’s settlement of a group salary grievance cannot be viewed in isolation from its role as collective negotiating representative for the union as a whole. This is especially so where, as here, the settlement avoids a compression of the salary schedule which would diminish increases in salary attributable to length of service and promotion thereby prejudicing the seniority interests of the nonintervening employees. Moreover, not to be overlooked is the strong policy of the law favoring settlement of litigation.
Accordingly, the Appellate Division did not err as a matter of law in determining that this Union did not violate its duty of fair representation when it settled the appeal from the order confirming the arbitration award by agreeing to surrender or to diminution of the benefits that had been awarded in arbitration to some employees in exchange for benefits to other employees not affected by the original award, there having been no arbitrary, discriminatory or bad-faith conduct by the Union.* ***[5]
The order of the Appellate Division should, therefore, be affirmed, with costs.

. This apparently was the salary that the attorney had been earning in his provisional position.

. CPLR 5015 (subd [a]) provides as follows:
“Rule 5015. Relief from judgment or order.
“(a) On motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
“1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party, or, if the moving party has entered the judgment or order, within one year after such entry; or
“2. newly-discovered evidence which, if introduced at the trial, would probably have produced a different result and which could not have been discovered in time to move for a new trial under section 4404; or “3. fraud, misrepresentation, or other misconduct of an adverse party; or “4. lack of jurisdiction to render the judgment or order; or “5. reversal, modification or vacatur of a prior judgment or order upon which it is based.”

. Because we conclude that the so-called “Final Supplemental Award” was not an award in arbitration but was an integral step in the settlement of appellate litigation, it is not necessary to consider or decide whether the intervenors would have had standing to challenge an award in arbitration, or whether CPLR 5015 would be applicable to set aside such an award (and whether if so, the provisions of paragraph 5 of subdivision [a] could be invoked to vacate a judgment based on an arbitration award).

. The decisions on which the intervenors would rely in support of a per se rule against exchanging the benefits certain employees would have received *198 under the original award for benefits to other employees do not support such a broad legal proposition. Rather, the opinions are expressed in terms of the factual contexts in which those cases arose (see Smith v Hussmann Refrig. Co., 619 F2d 1229, 1240 [ere banc], reh den 619 F2d 1253, cert den 449 US 839; Harrison v United Transp. Union, 530 F2d 558,561, cert den 425 US 958; Price v International Brotherhood of Teamsters, 457 F2d 605, 611).

. Inasmuch as we conclude that the Appellate Division properly dismissed, on the merits, the intervenors’ claim that the Union had violated its duty of fair representation, we do not consider or address the contention of the City, adopted in the concurring opinion, that violation of the duty of fair representation would not constitute grounds for vacatur under CPLR 5015 (subd [a], par 3).