OPINION OF THE COURT
 

 Memorandum.
 

 The order of the Appellate Division should be affirmed, without costs.
 

 Petitioner, a correction officer with a 14-year record of service, was terminated from his position as a result of an incident in which he allegedly falsely accused another employee of having sexual relations with an inmate. The employee denied the misconduct and filed a complaint against petitioner for making a false report. Petitioner, in turn, denied having made the statement. The dispute culminated in the filing of disciplinary charges against petitioner, and the matter proceeded to arbitration in accordance with the applicable collective bargaining agreement. Having been represented by an attorney provided by his union, petitioner was ultimately found guilty of having violated two departmental rules and was discharged from his position.
 

 Petitioner subsequently brought the present proceeding to vacate the arbitration award, arguing for the first time that the charges against him had been initiated to retaliate for his having testified in a Federal court action regarding pervasive racial bias at a Department of Correctional Services facility. According to petitioner, he had not raised this argument in the arbitration proceeding because his union attorney had "listened to none of this, had no time for it, and wanted [him] to plead guilty.”
 

 The Supreme Court granted the requested relief and vacated the arbitration award. On respondent’s appeal, however, the Appellate Division reversed and reinstated the award. We agree with the Appellate Division that petitioner’s submissions do not demonstrate a cognizable legal basis for vacating the outcome of the arbitration proceeding.
 

 Petitioner’s contention that the award is violative of public policy
 
 (see, e.g., Matter of Sprinzen [Nomberg],
 
 46 NY2d 623) is unpersuasive because it rests on an unproven premise, i.e., that the disciplinary charges against him were initiated and pursued to retaliate for his role in the Federal bias proceeding. The retaliatory motive of petitioner’s prosecutors was a factual matter that bore directly on the validity of the charges and, as such, was an issue for the arbitrators to resolve. To ask the court to vacate the award on the basis of the public policies
 
 *886
 
 against retaliatory discharge is to beg the very question that was placed before the arbitrators.
 

 Petitioner’s alternative argument based on CPLR 7511 (b) (1) (i), which provides for vacatur in the event of corruption, fraud or misconduct in procuring the award, fares no better. The "corruption, fraud or misconduct” to which petitioner refers is the union attorney’s alleged unwillingness to pursue his claim of retaliatory motive — conduct which petitioner asserts was a breach of the union’s duty of fair representation
 
 (see, Hines v Anchor Motor Frgt.,
 
 424 US 554;
 
 Vaca v Sipes,
 
 386 US 171). Traditionally, such fair representation claims are asserted in plenary actions in which the court is asked to determine both whether the union’s duty was breached and whether the collective bargaining agreement was violated
 
 (see, e.g., Del Costello v Teamsters,
 
 462 US 151, 163-164). Thus, even assuming that petitioner had a viable fair representation claim under New York State law
 
 (see generally, Matter of Civil Serv. Bar Assn. v City of New York,
 
 64 NY2d 188, 195-196;
 
 Sinicropi v New York State Pub. Empl. Relations Bd.,
 
 125 AD2d 386;
 
 Jackson v Regional Tr. Serv.,
 
 54 AD2d 305), a proceeding to vacate the arbitration award was not the proper forum for asserting it.
 
 *
 

 We have examined petitioner’s remaining contention that the arbitrator’s award was irrational and have found it to be without merit.
 

 Ciparick, J. (dissenting). We believe that the arbitration award directing petitioner’s termination should be vacated on the ground that it is violative of public policy
 
 (see, Matter of Silverman [Benmor Coats],
 
 61 NY2d 299, 308;
 
 Garrity v Lyle Stuart, Inc.,
 
 40 NY2d 354, 357) and that there should be a rehearing
 
 (see,
 
 CPLR 7511 [d]). Therefore, we respectfully dissent.
 

 Shortly before his termination, petitioner served as the Inmate Program Placement Coordinator at the Elmira Correctional Facility. It is fair to say that the program petitioner was charged with administering was an attempt by prison administrators to address the charges of discrimination leveled by minority inmates in a Federal class action against prison of
 
 *887
 
 ficials
 
 (see, Santiago v Miles,
 
 774 F Supp 775, 783). The class action alleged pervasive discrimination by prison officials in housing assignments, job placements and disciplinary matters involving minority inmates, which the Federal District Judge found to be substantiated by convincing statistical and testimonial evidence, including extensive testimony by petitioner
 
 (see, Santiago, supra,
 
 774 F Supp, at 783-784, 795-799, 801). Particularly significant is the following finding by the District Court Judge:
 

 "[Petitioner’s] testimony was remarkable in several respects. The testimony showed just how entrenched the racial bias was at Elmira in some of the staff. Time and again [petitioner’s] efforts to make race-neutral program assignments were thwarted by staff and guards. Incredibly, in a few instances, [petitioner] was himself harassed and intimidated by the offending guards. Apparently, nothing was done by top administrators concerning [petitioner’s] complaints”
 
 (id.,
 
 at 801).
 

 Petitioner relates that shortly after his testimony in the Federal class action, he was transferred to a different prison facility where he was met with unwelcoming remarks by the Deputy Superintendent. The misconduct charges followed soon thereafter. Despite the pattern of hostility exhibited toward petitioner, which arguably intensified after his testimony in the Federal class action, the union attorney assigned to represent him in the arbitration regarding the alleged incidents of misconduct summarily dismissed the relevancy of petitioner’s involvement in the Federal class action — assuring petitioner he would never lose his job — and did not raise this matter at the arbitration
 
 (see,
 
 Civil Service Law § 75-b [3];
 
 see also, Matter of Civil Serv. Bar Assn. v City of New York,
 
 64 NY2d 188, 196).
 

 While the majority points out that whether the charges against petitioner were trumped up in retaliation for his participation in the Federal class action, in contravention of Civil Service Law § 75-b (2) (a) (ii), is an issue for the arbitrator, the fact is that this was never placed in issue by petitioner’s union-appointed legal representative and was not even considered by the arbitrator. Because of the strong public policy decrying retaliatory discharges expressed in Civil Service Law § 75-b (2), together with the public policy, as articulated by the Supreme Court, recognizing an exception to the finality of arbitral awards procured at the expense of the
 
 *888
 
 employee’s right to fair representation (see,
 
 Hines v Anchor Motor Frgt.,
 
 424 US 554, 570-571;
 
 Vaca v Sipes,
 
 386 US 171, 177), we conclude that the award should be vacated, a determination compelled by the convincing factual findings and legal conclusions of the Federal District Court Judge in
 
 Santiago v Miles (supra).
 
 A rehearing before a different arbitrator, at which petitioner may appear with new counsel, should be held for the arbitrator to consider,
 
 inter alia,
 
 the genesis and nature of the misconduct charges, including whether they were pretextuál and brought in retaliation for petitioner’s testimony in
 
 Santiago v Miles (supra)',
 
 whether petitioner’s remarks were in fact “official;” and, if so, whether such remarks were uttered in disregard of his superior’s orders not to “play the [Department of Correctional Services] game”
 
 (see,
 
 CPLR 7511 [d]).
 

 Accordingly, the order of the Appellate Division should be reversed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Levine concur; Judge Ciparick dissents and votes to reverse in an opinion in which Judge Smith concurs.
 

 Order affirmed, without costs, in a memorandum.
 

 *
 

 The flaw in the dissent’s position is that it assumes, without benefit of a hearing or appropriate fact findings, that the union did, in fact, breach its duty of fair representation. Of course, in the absence of a finding that such a breach has occurred, there is no legal basis for vacating the arbitration award. Indeed, it is precisely because the discrete fair representation question still needs to be litigated that a separate plenary action is required.