Schussler v Department of Educ. of the City of N.Y. (2024 NY Slip Op 50811(U))

[*1]

Schussler v Department of Educ. of the City of N.Y.

2024 NY Slip Op 50811(U)

Decided on June 27, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2024
Supreme Court, New York County

Jonathan Schussler, Plaintiff,

against
The Department of Education of the City of New York, GRISMALDY LABOY WILSON, LISA LUFT, CARREN STAPLE, Defendant.

Index No. 154316/2017

Stewart Lee Karlin, Esq. for Plaintiff
David Choi, Esq. for Defendants

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95 were read on this motion for SUMMARY JUDGMENT.
With the instant motion, Defendants New York City Department of Education ("DOE") and Lisa Luft ("Luft")(Collectively "Defendants") move, pursuant to CPLR §3212, for summary judgment and an order dismissing Plaintiff Johnathan Schussler's ("Plaintiff") complaint as against them. Plaintiff opposes the motion. For the reasons stated herein, Defendants' motion is denied.
BACKGROUND
Plaintiff is a former New York City school teacher at Felisa Rincón de Gautier Institute for Law and Public Policy ("Rincón"). Plaintiff previously worked for the DOE from 2001-2005 and returned to the DOE in 2010 as a substitute teacher and worked in various schools (NYSCEF Doc No. 38, statement of material facts ¶¶ 6-7). In 2014, Plaintiff began working as a [*2]probationary social studies teacher at Rincón (id. ¶ 8). Wilson was the principal of Rincón when Plaintiff started. Non-party Avis Terell ("Terell") served as interim principal from March-April 2016 and Luft became acting principal on May 3, 2017 (id. ¶¶ 9-11).
Plaintiff self-identifies as a Jewish man and has been practicing Orthodox Judaism his entire life. He observes several Jewish holidays as part of his religious practice (id. ¶ 12). Sometime between September 2014 to October 2014, he submitted a request to observe Sukkot (id. ¶ 15). Plaintiff testified at his deposition that shortly after submitting his request, Principal Laboy Wilson ("Wilson") asked him to submit documentation from his religious institution confirming the dates that Sukkot was observed (id. ¶ 16). Plaintiff provided a letter from his rabbi detailing the dates that Sukkot was observed in 2014, October 15-17 (id. ¶ 17). His request was granted (id. ¶ 18). On one of the days he observed Sukkot, his wife received a phone call notifying Plaintiff to correctly input his leave request into the DOE's electronic timekeeping system (id. ¶ 19). He alleges he was never required to do this at the other schools where he taught (id.). Plaintiff alleges that this call was a violation of his religious observance of Sukkot and a way of being "checked up on" to see if he was "duly observing the holiday" (id. ¶ 20). He admits that for future religious holidays he began to enter his leave requests into the electronic system and did not receive phone calls instructing him to input his leave (id. ¶ 21).
On December 10, 2014, Plaintiff was involved in an altercation with a student where it was alleged that Plaintiff walked out of his classroom, leaving students unattended, after stating to the students "I'm here for a paycheck ... it wasn't my choice to be here, I was placed here" (id. ¶ 23). Plaintiff disputes the characterization of the altercation with the student (NYSCEF Doc No. 92, response to statement of material facts ¶ 24). On February 23, 2015, Assistant Principal Rosa Salcedo, after reviewing multiple witness statements, substantiated the allegations as in violation of Chancellor's Regulation A-421 and Chancellor's Regulation A-412, and a letter was placed in Plaintiff's file regarding the incident (NYSCEF Doc No. 38, statement of material facts ¶ 24).
On September 22, 2014, November 5, 2014, and December 12, 2014, Wilson rated Plaintiff in informal observations as ineffective and developing in various components (id. ¶¶ 27-29). On March 6, 2015, he was again rated in an informal observation as ineffective and developing in various components and was advised that his tenure was not going to be recommended by Wilson based on the four observations and the letter in his file (id. ¶ 30). Plaintiff was rated ineffective for his annual performance review for the school year 2014-2015, which he appealed (id. ¶ 31-32). Plaintiff appealed the annual performance rating, which was denied on April 21, 2016 (id. ¶ 33).
On April 17, 2015, Plaintiff's probationary period was extended from September 8, 2015 to September 8, 2016, and was later extended again to September 6, 2017 (id. ¶ 34-35). On July 7, 2017, the DOE notified Plaintiff that his probationary status was being discontinued and his appointment would terminate at the close of sixty business days from the date of the letter or completion of the probationary period on September 5, 2017, whichever was first (id. ¶ 49).
Plaintiff testified at his deposition that he did not recall Terell or Luft saying or doing anything that he believed indicated bias against him based on his religion or gender. (id. ¶ 36, 38). He also testified that on one occasion Wilson advised that he take classes on Saturdays to help him develop the areas where he was evaluated poorly, which he felt took issue with his religion (id. ¶ 37). Plaintiff testified that other Jewish male teachers received "ineffective ratings" on their evaluations (id. ¶ 61). Defendants dispute that those teachers received [*3]ineffective ratings, stating that some of the other teachers' ratings were "developing," "effective," or higher in certain components. (id. ¶¶ 61-64). Plaintiff also asserts that he was discriminated against based on gender because a Jewish female teacher received favorable evaluations in comparison to the male Jewish teachers at the school (id. ¶ 65). He also asserts that Wilson's negative evaluation of him in 2017 was in retaliation for filing this action, and that "he was set up by the District office who sent Luft to discontinue Plaintiff" (NYSCEF Doc No. 92, response to statement of material facts ¶ 38).
ARGUMENTS
In support of the instant motion, Defendants first assert that all of Plaintiff's claims that accrued prior to May 9, 2016, are time-barred, governed by a one-year statute of limitations pursuant to NY Education Law § 3813(2-b). This includes all negative evaluations from the 2014-2015 school year, the letter in his file from February 2015, and certain negative evaluations from the 2015-2016 school year. Defendants further contend that Plaintiff fails to state a claim for discrimination under the New York City Human Rights Law ("NYCHRL") on several grounds: (1) many of the acts he complains of, such as negative evaluations, the letter in his file, and the call during Sukkot, do not constitute adverse employment actions; (2) he fails to make a prima facie showing of disparate treatment; (3) the "same actor doctrine" bars the claim because Luft is also Jewish; and (4) Plaintiff's claims are supported by non-discriminatory reasons. Additionally, Defendants assert that Plaintiff cannot demonstrate that a hostile work environment was created due to his membership in a protected class, and that his complaints amount to no more than petty slights and trivial inconveniences. Lastly, Defendants argue that Plaintiff does not provide any direct evidence to support a causal connection between any protected activity and any alleged adverse employment action, nor can he show that Defendants' legitimate reasons were pretextual.
In opposition, Plaintiff argues that the Sukkot phone call and a "pattern of discrimination against Jewish teachers at the school" were discriminatory. He highlights that he was the only Orthodox Jewish teacher at the school and had discussions with the other four male Jewish teachers, leading them to conclude that their observations of bias were due to their religion and gender. Plaintiff asserts that Luft is a "professional closer" who has previously closed two New York City high schools, and he believes she was sent by the district office to "discontinue him." As evidence, he points to her deposition testimony, where she acknowledges being known as "the closer" and her awareness of the EEOC charges and the notice of claim he filed in April 2017 (see Luft Deposition Tr., NYSCEF Doc. 45 at Pg. 20, 22). He also claims she provided inaccurate feedback in reviews of other Jewish teachers and used a "very nasty tone." Plaintiff further alleges that Laboy demonstrated bias against him by requiring documentation for his celebration of Sukkot, due to her "tone" when requesting the documentation, by repeatedly asking him to take classes on Saturdays despite his religious observance, and by referencing a political event involving a dispute between the American and Israeli governments (see Plaintiff Deposition Tr., NYSCEF Doc. 44 at Pg. 23, 33).
Plaintiff asserts that summary judgment should be denied due to the liberal standard of review for NYCHRL claims. He argues that the close proximity between his discontinuance and the filing of his EEOC complaint establishes a temporal connection that supports his retaliation claim, sufficient to withstand summary judgment. Plaintiff contends that his treatment rises to the level of a hostile work environment and that his claims are not time-barred because of a [*4]present and continuing violation.
Accordingly, Plaintiff maintains that Defendants' motion for summary judgment should be denied in its entirety.
DISCUSSION
In order to prevail on a motion for summary judgment, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence demonstrating the absence of any material issue of fact (see Klein v. City of New York, 89 NY2d 883 [1996]; Ayotte v. Gervasio, 81 NY2d 1062 [1993]). Once the moving party has satisfied these standards, the burden shifts to the opponent to rebut that prima facie showing, by producing contrary evidence in admissible form sufficient to require a trial of material factual issues (Amatulli v. Delhi Constr. Corp., 77 NY2d 525 [1999]).
Summary judgment is a drastic remedy. Therefore, the court's function on a motion for summary judgment is issue finding rather than issue determination (Stillman v Twentieth Century Fox Film Corp., 3 NY2d 395 [1957]). Since summary judgment is a drastic remedy, it should not be granted where there is any doubt as to the existence of a triable issue (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]). The burden on the movant is a heavy one, and the facts must be viewed in the light most favorable to the non-moving party (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824 [2014]).
When confronted with a summary judgment motion, it is the court's responsibility to search the record for triable issues of fact without determining the strength of either parties' case (Cross v. Cross, 112 AD2d 62 [1st Dept 1985]). In doing so, the court must search evidentiary facts sufficient to defeat a motion for summary judgment. The mere existence of a material issue of fact should lead to the denial of the motion (see Downing v. Schreiver, 176 AD2d 781 [2d Dept 1991]).
To establish entitlement to summary judgment dismissing a claim of alleged discrimination under the NYCHRL, the defendant must demonstrate that the plaintiff cannot make out a prima facie claim or, after offering a legitimate, nondiscriminatory reason for the employment action, that there is no material issue of fact as to whether the explanations were pretextual (Ellison v. Chartis Claims, Inc., 178 AD3d 665, 667 [2d Dept 2019]; Forrest v. Jewish Guild for the Blind, 3 NY3d 295, 305 [2004]; Keceli v. Yonkers Racing Corp., 155 AD3d 1014, 1015[2d Dept 2017]). To defeat the motion, the plaintiff must raise a triable issue of fact as to whether the reasons proffered by the defendant were merely a pretext for discrimination (Ellison, 178 AD3d at 668, supra; Forrest, 3 NY3d at 307, supra; Furfero v. St. John's Univ., 94 AD3d 695, 697 [2d Dept 2012]).
"No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination" (Sethi v. Narod, 12 F. Supp. 3d 505, 536 [E.D.N.Y 2014]). An inference of discrimination can be drawn from circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's adverse employment action" (Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 [2d Cir. 2001]).
In this matter, Defendants have made a prima facie showing in support of their motion [*5]for summary judgment. First, Defendants have demonstrated that Plaintiff's claims are deficient due to a lack of record evidence establishing that any actions taken were based on Plaintiff's gender or religion. Second, Defendants have provided testimony indicating that Plaintiff was not treated less favorably than others similarly situated, thereby failing to establish a claim of discrimination or a hostile work environment. Third, Defendants have asserted that their actions were legitimate, non-discriminatory, and primarily based on Plaintiff's consistently poor performance. Fourth, Defendants have highlighted that they provided avenues for Plaintiff to file complaints about the alleged discriminatory acts, which Plaintiff failed to utilize. Finally, Defendants have shown that Plaintiff's claim for retaliation fails, as the record evidence suggests that the alleged retaliatory acts are too remote in time from Plaintiff's protected activity to sustain such a claim.
Notwithstanding, viewing the evidence proffered by all sides in a light most favorable to Plaintiff, this court finds that there are issues of fact sufficient to defeat Defendants' motion. Where, as here, Defendants have moved for summary judgment and have offered evidence in admissible form of one or more nondiscriminatory motivations for their actions, it is incumbent upon the court to scrutinize whether the evidence proffered, when set against Plaintiff's characterizations, could be construed as false, misleading, or incomplete (see Bennet v. Health Mgt. Sys., Inc., 92 AD3d 29 [1st Dept 2011]). Because discrimination can at times only be understood from the eyes of the beholder, and recognizing that a central premise of the NYCHRL is to resist efforts to deprive alleged victims of discrimination of a full and fair hearing before a jury of their peers by means of summary judgment (see Williams v. New York City Housing Authority, 872 NYS2d 27 [1st Dept 2009]), summary judgment is disfavored where a potentially equally persuasive account could be made by the alleged victim as well as the alleged perpetrator.
Here, in opposition to Defendants' prima facie showing, Plaintiff has highlighted that Luft came to Rincón with a reputation for being "the closer." Luft claims that she did not talk to the superintendent, prior principals, or anyone who had previously observed Plaintiff teaching. However, on the second day she was at Rincón, she conducted an observation of Plaintiff. This was the only opportunity she had to observe Plaintiff, as he went out on leave shortly thereafter. Plaintiff claims that Luft targeted him, held only one observation to document a reason for his termination, and then went through with a pre-determined decision to adversely impact his employment. To divorce such an inference from mere innuendo or conjecture, Plaintiff underscores that he began experiencing discrimination when he asked for days off in October 2014 for the religious holiday of Sukkot (Plaintiff Aff ¶ 9). Plaintiff recalls that when he did, Wilson angrily responded and demanded documentation from his religious institution (Plaintiff Aff ¶ 10). Additionally, Plaintiff underscores that Wilson questioned the validity of Plaintiff's request by searching for the days of observance in Israel, which are different from the days of observance in the United States (Plaintiff Aff ¶ 11). Wilson followed this by calling Plaintiff's home on the first morning of religious observance to tell him that he did not put the reason for his absence in the computer, something she had not previously told Plaintiff to do. Plaintiff argues that this excuse was merely a pretext for checking to make sure that Plaintiff was using the day off as a religious observance (Plaintiff Aff ¶ 12). Plaintiff asserts that he was also given a letter in his file in 2014 for "belittling students," despite not engaging in such behavior. Plaintiff also notes that he took issue when Wilson repeatedly requested that Plaintiff take classes on Saturdays to help him develop in areas despite knowing that he is a practicing Orthodox Jew [*6](Plaintiff Aff ¶ 15).
Plaintiff notes that his supervisors also refused to provide him with a phone in his classroom since October 2016, despite his numerous requests. Plaintiff states that this created an unsafe situation for him, particularly given that the principal had previously been physically attacked by a student (Plaintiff Aff ¶ 16). Plaintiff also states that he was wrongfully forced to sign an extension of probation through September 2017, six months prior to the expiration of his probation. All of this, in Plaintiff's view, was motivated by religious and gender based animus, especially when viewed through the prism of Defendants' surrounding actions.
Plaintiff further highlights that a decision was made to terminate him while he was on leave based on a single observation from Luft in early June 2017. The very next day after she arrived and having never been at the school nor spoken to the prior principal, Luft observed Plaintiff at the end of the day on May 4, 2017. Based on this single observation and a review of his personnel file, Luft recommended Plaintiff's discontinuance, as she never conducted another observation since Plaintiff went out on leave the following week. She did not speak to anyone other than that the assistant principal, who never observed Plaintiff (see Luft Deposition Tr., NYSCEF Doc. 45 at Pg. 29, 20-25; Pg. 30, 2-3; Pg. 31, 7-11; Pg. 32, 13-25; Pg. 33, 2-7, 12-17, 24-25; Pg. 34, 3-6). Plaintiff underscores that the observation conducted on May 4th was entirely negative and did not point out one thing that Plaintiff was doing correctly. Moreover, Plaintiff mentions that Luft failed to identify specific remediation tailored to him.
Courts must exercise special caution in granting summary judgment because "discrimination seldom announces itself openly" (Cadet-Legros v. New York Univ. Hosp. Ctr., 135 AD3d 196, 202 [1st Dept 2016]). The pertinent inquiry in any discrimination case is not whether the defendant's decision to terminate the plaintiff was correct, but whether it was discriminatory (DeFina v. Meenan Oil Co., 924 F. Supp. 2d 423, 435 [E.D.NY 2013]). The critical issue before the court is whether there is sufficient evidence by which a jury could find that the employer's decision was discriminatory, not whether it was wise (Holleman v. Art Crating Inc., 2014 U.S. Dist. LEXIS 139916 [S.D.NY 2014]). Therefore, a plaintiff's subjective disagreement with the employer's assessment of their performance is not actionable under the discrimination statutes (White v. Pacifica Found., 973 F. Supp. 2d 363, 382 [S.D.NY 2013]). However, that same evaluation, when placed in context with other surrounding conduct, may reveal that the defendant's actions were discriminatory.
In examining whether Defendants' actions raise an inference of discrimination, this court finds that Defendants' actions certainly raise a factual issue regarding whether their conduct was motivated by discriminatory animus. Plaintiff has suggested that his status as a Jewish man led Defendants to scrutinize his vacation requests more closely than they would have otherwise, and to call him at home to ensure his religious observance was genuine, among other actions. Plaintiff has credibly asserted that his allegations, in their totality, create a penumbra of uncertainty and factual divergence regarding Defendants' stated rationale, which warrants resolution by a jury. Ultimately, a jury will be tasked with assessing the credibility of witnesses, while this court is confined to interpreting the applicable law.
In totality, the divergent account proffered by Plaintiff in opposition to Defendants' prima facie showing underscores the existence of factual issues regarding plausible discrimination under the NYCHRL. Plaintiff has specifically pointed out that other Jewish male teachers, including himself, were all rated lower than their non-Jewish colleagues. This clearly meets Plaintiff's burden under the NYCHRL and establishes that there are issues of fact pertaining to [*7]whether there was a legitimate reason for Plaintiff's termination that was not permeated with a discriminatory intent. In addition, contrary to Defendants' arguments, there is arguable temporal proximity sufficient to support an inference of discrimination and retaliation. To be sure, the negative observation occurred within about three weeks of the filing, and the decision to terminate within four weeks of the filing of the lawsuit. In addition, given Plaintiff's overall effective rating, issues of fact pertaining to retaliation exist. Moreover, viewing the facts alleged in a light most favorable to Plaintiff, issues of fact also persist with respect to whether Plaintiff was subjected to a hostile work environment.
The culmination of all of this, when put in context and viewed in a light most favorable to Plaintiff, leads this court to the unmistakable conclusion that there are issues of fact that warrant a denial of Defendants' motion. Plaintiff is entitled to have the facts of this case, underscored by competing accounts, resolved by a jury of his peers rather than determined by this court as a matter of law. Accordingly, denial of the instant motion is warranted.
Finally, Plaintiff's claims are not time-barred. Defendants concede that everything after May 9, 2016, is timely, and thus Plaintiff's termination claim is timely. However, it is also true that the continuing violation doctrine is an exception to the applicable statute of limitations. "To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the policy occurred within the limitations period" (Patterson v County of Oneida, 375 F3d 206, 220 [2d Cir 2004]). The continuing violation doctrine allows a plaintiff to seek recovery in claims relating to occurrences outside of the three-year window "as long as the acts were part of the same pattern alleged and at least one occurred within the statute of limitations period" (Hughes v United Parcel Serv., Inc., 4 Misc 3d 1023[A] at *15-16, 2004 NY Slip Op 51008[U] [Sup Ct, NY County 2004]). In the context of a discrimination and retaliation claim, this court finds that there is an alleged continuing violation asserted here, such that all past relevant information contained within Plaintiff's complaint to establish that there was a causal connection should be heard by a jury when evaluating the merits of Plaintiff's allegations.
Accordingly, it is hereby
ORDERED that Defendants' motion for summary judgment is denied in its entirety.
This constitutes the decision and order of the court.
DATE 6/27/2024
HASA A. KINGO, J.S.C.