In the Matter of the Application of THE TRUSTEES OF THE SAILORS'
SNUG HARBOR IN THE CITY OF NEW YORK, Petitioner, for an
Order against JOSEPH D. MCGOLDRICK, as Comptroller of the
City of New York and as Successor to FRANK J. TAYLOR, as
Comptroller of the City of New York, Respondent.

First Department, June 24, 1938.

*Barent L. Visscher* of counsel [*C. O. Donahue* and *Joseph G.
Kelly* with him on the brief; *Hawkins, Delafield & Longfellow*,
attorneys], for the petitioner.

*Robert Granville Burke* of counsel [*Oscar S. Cox* and *Max Brofman*
with him on the brief; *William C. Chanler, Corporation Counsel*],
for the respondent.

GLENNON, J.    This proceeding brings up for review two deter-
minations of the comptroller, assessing a tax against the petitioner
under the New York City Sales Tax Laws.

There is little if any dispute as to the facts.    Robert Richard
Randall died in 1801, leaving a last will and testament which was
duly admitted to probate in the Surrogate's Court, New York
county, on June tenth of that year.    He devised and bequeathed
the remainder of his estate to his trustees for the purpose of erecting
an asylum or marine hospital to be called " The Sailors' Snug
Harbor," where aged, decrepit worn-out sailors were to be supported

and maintained, as soon as the trustees, or a majority of them, should decide that the proceeds of the estate would support fifty or more sailors.

The testator directed that if his trustees, legally, could not carry out his intention they should apply to the Legislature " to incorporate them " for the purposes specified in his will. The trustees did so and were incorporated by an act of the Legislature (Chap. 4 of the Laws of 1806, amd. by chap. 69 of the Laws of 1814, and further amd. by chap. 276 of the Laws of 1828).

The real property of the testator at tne time of his death consisted of about twenty-one acres located in ward 15, borough of Manhattan, and certain lots in the lower section of the same borough. In May, 1831, the trustees purchased a farm fronting on the Kill van Kull, Staten Island. A little over two years later, the Sailors' Snug Harbor was completed and formally opened.

In order to qualify for admission to the institution the applicant must be an " aged, decrepit and worn-out sailor " who has served as an officer or seaman for at least five years on sea-going vessels under the United States flag. The average number of sailors supported at the institution yearly, for the last twenty years, is about 850. They are given food, clothing, shelter, recreation and medical attention. When they die the petitioner takes care of burial. No charge of any kind is made. There are about 300 employees, consisting of nurses, orderlies, laundresses, engineers, firemen, farmers, gardeners, steamfitters, machinists, tailors and clerks.

The income from the trust, after the deduction of necessary expenses, is used exclusively for the maintenance of the beneficiaries. The funds for the support of the mariners of the Sailors' Snug Harbor are, according to the testimony, derived from the real estate owned by the founder at the time of his death. Originally in 1831, all the property was " on ground leases." At that time there were no buildings. Later buildings became part of the trust property. Some are used for business purposes while others are residential. All the moneys received from the properties after payment of necessary expenses are used solely for trust purposes.

The petitioner within the city of New York has made purchases of tangible personal property which would be subject to the tax under the provisions of the local laws if it were not for the fact that it is a charitable institution. The personal property has been purchased for use at the mariners hospital and also for the endowed property in the borough of Manhattan. The comptroller has assessed a tax on the purchase of tangible personal property for use in connection with the real property in Manhattan

■

but has declared that the personal property which has been purchased for use at the Sailors' Snug Harbor is tax exempt.

In connection with the operation of its real property the petitioner supplies electric service through Curtis Electric Corporation, its agent, to some of its tenants. Respondent has assessed a tax on the sale of this service. A contract dated February 13, 1936, between Curtis Electric Corporation and the trustees provided for the purchase and installation of an electric generating plant by the former. Title to the plant was to be vested in the trustees. Curtis Electric Corporation contracted with the Nordberg Manufacturing Company of Milwaukee, Wis., for the purchase and shipment of the equipment from Milwaukee to New York. The comptroller has assessed a tax upon the purchase of this equipment.

It is argued by the petitioner that it is a charitable institution supported wholly by endowment and is not operated for profit and as a consequence it claims that it is exempt entirely from the payment of the sales tax.

We are of the opinion that petitioner's argument is well founded. Section 2 of the local law, in so far as applicable, reads as follows: "Receipts from sales or services   *   *   *   by or to semi-public institutions   *   *   *   shall not be subject to tax hereunder.". Section 1, subdivision (h), provides: " The word ' semi-public ' means those charitable and religious institutions which are supported wholly or in part by public subscriptions or endowment and are not organized or operated for profit."

It cannot be disputed that the petitioner was not organized for profit. Other than the board of trustees who are authorized to carry out the testator's beneficent purposes it has no membership. Further, it appears conclusively that the entire net income received from the operation of the real property is devoted to the maintenance of the mariners at the Sailors' Snug Harbor.

The reasoning employed by the comptroller, whereby he declared purchases made at Staten Island to be tax exempt, should apply with equal force to all purchases made in connection with the operation of the trust property. The Sailors' Snug Harbor is a semi-public charitable institution within the meaning of the local law and consequently, pursuant to the provisions thereof, its receipts from sales or services are tax exempt.

In view of our conclusions we do not deem it necessary to discuss the point raised by petitioner that the equipment which was shipped from the city of Milwaukee to New York is tax exempt under the authorities. Suffice it to say that we believe that point also to be well taken. (*Matter of National Cash Register Co.* v. *Taylor,* 276 N. Y. 208.)

For the reasons assigned, the determination of the comptroller should be annulled, with fifty dollars costs and disbursements to the petitioner, and the comptroller is hereby directed to return to the petitioner the amount of the tax deposited.

O'MALLEY, TOWNLEY, COHN and CALLAHAN, JJ., concur.

Determination unanimously annulled, with fifty dollars costs and disbursements to the petitioner, and the comptroller directed to return to the petitioner the amount of the tax deposited. Settle order on notice.