In the Matter of TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK et al., Appellants, against PAUL M. HERZOG et al., Constituting the New York State Labor Relations Board, Respondents.

In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Respondent, against TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK et al., Appellants.

First Department, March 9, 1945.

*Paul Windels* of counsel (*John Godfrey Saxe* with him on the brief; *Saxe, Bacon & O'Shea,* attorneys), for appellants.

*William E. Grady, Jr.,* of counsel (*Philip Feldblum* and *Jay Kramer* with him on the brief), for respondents.

*Aaron Benenson* for Building Service Employees International Union, A. F. of L., *amicus curiae.*

UNTERMYER, J.  The order appealed from affirms an order of the New York State Labor Relations Board directing Columbia University, an educational corporation, and its agent, Bethlehem Engineering Corporation, to bargain collectively with Local 32-B, Building Service Employees Union of the American Federation of Labor.  Local 32-B consists of service employees engaged in the operation of a building known as No. 1680 Broadway, Manhattan.  The refusal of the University and its agent to comply with the order of the Board was based on the provisions of section 715 of the New York State Labor Relations Act constituting article 20 of the Labor Law, which, so far as material to this appeal, provides:

" § 715.  *Application of article.*  The provisions of this article shall not apply  *  *  *  to employees of the state or of any political or civil subdivision or other agency thereof or to employees of charitable, educational or religious associations or corporations."

Columbia University is the owner of the premises No. 1680 Broadway on which a building is now erected leased by the University to tenants for business or commercial purposes. All the net proceeds of the operation of the building are applied to the educational or charitable purposes of the University.  The building is managed on a commission basis by the Bethlehem Engineering Corporation as the agent of the University which, however, supervises its operation and executes the leases to the tenants.  It appears not to be contested, nor could it be contested on the present record, that the employees who service the building are the employees of the University.  The Board's

contention is that they are not employees " within the meaning of section 715."

The theory on which the Board and the Special Term have proceeded in subjecting the University to the jurisdiction of the Board is that section 715 of the Labor Law applies only to employees who are engaged in discharging the charitable or educational functions of the University and not to employees who render service in connection with a commercial enterprise even though in that capacity they are no less the employees of an educational and charitable corporation.

It is conceded that Columbia University is an educational corporation. Within the legal definition of that term it is also a charitable corporation. (*Hamburger* v. *Cornell University,* 240 N. Y. 328; *Butterworth* v. *Keeler,* 219 N. Y. 446.) Since the employees who service this building are employees of an educational and charitable corporation, they would seem to fall directly within the provisions of section 715 by which such employees are excluded from the operation of the New York State Labor Relations Act. To sustain the contention of the Board would make necessary the interpolation of a clause restricting that exclusion to employees engaged exclusively in discharging the charitable or educational functions of the University. But there is no such limitation in the statute, the terms of which are not restricted and are not ambiguous. As the statute has been written, and as we must read it, the test is not the nature of the undertaking on which the employee is engaged but the character of the employer. If the exclusion is to be contracted beyond the fair import of its terms, it is for the Legislature, not for us, to make the change. (*Matter of McNerney* v. *City of Geneva,* 290 N. Y. 505; *Matter of City of New York* [*Ely Avenue*], 217 N Y. 45.) Certainly, where conflicting arguments are possible and reasonable concerning the purpose of the Legislature, it is our plain duty to adhere to the language in which it has expressed itself.

Various reasons suggest themselves for the broad exclusion of educational, religious and charitable organizations from the operation of the Labor Relations Act assuming such considerations to be relevant in the interpretation of a statute the terms of which are not ambiguous. (*Matter of Hering,* 196 N. Y. 218.) It may be that the Legislature, in excluding employees of such organizations together with employees of the State and its political and civil subdivisions, considered that the character of such employers, not engaged in industry with any motive or prospect of personal gain, was sufficient assurance of fair deal-

ing with their employees to render unnecessary the protection of the Labor. Relations Act. The Legislature may also have been animated by the traditional policy of stimulating religious, charitable and educational contributions. (*Matter of Huntington,* 168 N. Y. 399.) We would be less than candid if we did not say that there were employers and contributors known to be opposed to the enactment of the State Labor Relations Act. The Legislature may have believed that charitable support might be withdrawn, or at least curtailed, if institutions maintained exclusively for the benefit of others, were required to bargain collectively under compulsion of law. All these considerations would apply whether the employer is engaged in the discharge of its charitable functions or in commercial enterprises the income of which is applied to the benefit of the charity. There is, moreover, no greater element of incongruity in requiring other owners of commercial property to bargain collectively with their employees while excluding charitable corporations from that obligation than in requiring charitable corporations to bargain collectively with one group of employees while excluding others.

The argument of the Board is derived principally from the recitals or preamble of the statute (§ 700) from which the inference is attempted to be drawn that the provisions of section 715 should not be applied to charitable or educational organizations unless engaged in charitable or educational work. The simple answer to that contention is that section 715 expressly excludes such employers from the provisions — all the provisions — of article 20 and thereby renders the declaration of " Findings and policy " in section 700 wholly inapplicable to them. (*Matter of Good Humor Corporation* v. *McGoldrick,* 289 N. Y. 452.) In *Railway Mail Assn.* v. *Corsi* (293 N. Y. 315) the court, after quoting in full the provisions of section 715, expressed itself as follows: " The purpose of section 715 is expressed in plain language. It does not purport to change the definition of the term ' labor organization.' It does not in terms or in effect prohibit the formation of labor organizations as so defined among the employees of any employer, but it does exclude *from the application of article 20* of the Labor Law the employees in specified employments and it denies to such employees, whether members of labor organizations or not, the benefit of the provisions of the statute devised for ' the protection of employees' right to organize and bargain collectively.' The exclusion of some categories of employees from the application of the statute constitutes a legislative determination that

the ' public policy of the state ' as ' declared ' in the same article would not be promoted by ' encouraging the practice and procedure of collective bargaining ' by government employees." (Italics not ours.)

The purpose of the Legislature in enacting section 715 is confirmed by comparison with other statutes in some of which the Legislature found no difficulty in restricting the exemption, by the use of appropriate language, in the very manner for which the board contends. Thus, under those provisions of the Tax Law (§ 4, subd. 6)' which exempt corporations organized for charitable, religious or educational purposes from real estate taxation, the exemption is limited to real property " used exclusively for carrying out thereupon one or more of such purposes ". At other times, the Legislature has seen fit to broaden the exemption, as we think it has done in article 20 of the Labor Law, to exclude from taxation commercial property owned by the organization, provided " the entire net income of which real property is exclusively applied or to be used " to maintain the charity. (Tax Law, § 4, subd. 6; *Peo. ex rel. Trustees M. H. & A. Fund* v. *Miller,* 279 N. Y. 137.) Again, in the Unemployment Insurance Law (Labor Law, former art. 18, § 502), the Legislature used language which, though not identical with section 715 of article 20 of the Labor Law, is of similar import and which has consistently been held by decisions of the Unemployment Insurance Appeal Board to exclude Columbia University from the scope of that act in the operation of commercial property.

These statutes and decisions involving exemption or exclusion of charitable, religious and educational organizations from taxation are relevant in determining the intent of the Legislature in excluding such organizations from the provisions of the State Labor Relations Act. It is true, as contended by the Board, that here the Legislature was concerned with the protection of labor, but it is equally true that here it was also concerned, as it was in relation to taxation, with the protection of public charity for which, since ancient times, it has shown extreme solicitude. From the manner in which these conflicting interests were reconciled and adjusted, we may draw inferences to assist us in ascertaining the legislative intent in the enactment of section 715. (*Railroad Co.* v. *Grant,* 98 U. S. 398; *Matter of Metropolitan Life Ins. Co.* v. *Boland,* 281 N. Y. 357.) By that process of contrast and comparison, we find that whenever the Legislature has desired to discriminate between property used in the discharge of charitable or educational functions and revenue-pro-

ducing property, it has encountered no difficulty in saying so and its purpose has been made effective by the courts. Thus, in *Matter of Sailors' Snug Harbor of N. Y.* v. *McGoldrick* (255 App. Div. 64, affd. 280 N. Y. 537) exclusion from sales taxes was held to apply to a charitable organization in the operation of commercial and residential income-producing property under a New York City Local Law which in general terms excluded such institutions from the imposition of the tax. The same principle was recently applied in *Matter of Emigrant Ind. Sav. Bank* v. *McGoldrick* (268 App. Div. 277). Nor does our decision in *White* v. *Boland* (254 App. Div. 356) hold otherwise. We there held that the Superintendent of Banks, operating real property for the benefit and in the interest of the depositors and stockholders of a bank, was not the agent of the State for the reason that the principal for whom the Superintendent was acting was the bank.

The suggestion is made that our conclusion might render doubtful the constitutionality of section 715 as in derogation of article I, section 17, of the State Constitution, which provides: "Employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

We think the doubt is without substance. The constitutional provision enacted by amendment in 1938 accords recognition to the right of labor to organize and bargain collectively which, in 1935, had found expression in the Labor Relations Act. That constitutional amendment was not intended to invalidate existing legislation which imposed a duty on *employers* to bargain collectively with employees even though that obligation by reason of certain exemptions or exceptions was not in all respects coextensive with the rights of labor. We think this was implied, if not directly decided, in *Railway Mail Assn.* v. *Corsi* (293 N. Y. 315, *supra*). If the constitutional provision were interpreted otherwise it would inevitably nullify every limitation on the duty of employers to bargain collectively, including all the provisions of section 715. Neither the Board nor the Union which has filed a brief *amicus curiae* contends for that result.

Finally, it is suggested that the court may not overrule the determination of the Board if it has warrant in the record and is reasonable in law. From what has been written it should be evident that upon the uncontradicted facts we find no warrant in the record for the exercise of jurisdiction by the Board. The decision in this State relied on by the Board (*Matter of Electrolux Corporation*, 288 N. Y. 440) required the Board to determine

whether representatives of the Electrolux Corporation were employees or independent contractors as a matter of law. The court held that "there was substantial legal evidence to support the finding of the Appeal Board * * * that respondent's sales representatives are in fact employees" and that accordingly the determination of the Board should have been sustained. The court reaffirmed the rule stated in *Matter of Morton* (284 N. Y. 167), to which we think we have adhered in the disposition of the present case, that "The question to be reviewed by us is not whether claimant was an employee of respondent as a matter of fact, but whether upon the basis of the record before us we must decide as a matter of law that claimant was not an employee." Here it is uncontroverted that the members of Local 32-B are employees of the University and that the University is a charitable and educational corporation. Thus, the only problem that remains is whether, by reason of the provisions of section 715, the petitioners are subject to the jurisdiction of the Board.

The order appealed from should be reversed, with costs and disbursements, and the determination of the Board should be annulled.

TOWNLEY and GLENNON, JJ., concur; MARTIN, P. J., dissents and votes to affirm.

Order reversed, with costs and disbursements to the petitioners, and the determination of New York State Labor Relations Board annulled. Settle order on notice.