Kyle **MCGOVERN, Linda Trentacoste Spagnuolo, Richard Cashman and William Martin, Plaintiffs,**

v.

**LOCAL 456, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS AND WAREHOUSEMEN AND HELPERS OF AMERICA, AFL—CIO, Defendant.**

No. 99CIV.10400 (WCC).

United States District Court, S.D. New York.

July 26, 2000.

312

Law Offices of Lisa Fern Colin, White Plains, NY, for plaintiffs, Lisa Fern Colin, of counsel.

Roy Barnes, P.C., Elmsford, NY, for defendant, Wendell V. Shepherd, Adrienne C. Paule, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs, Senior Assistant County Attorneys ("Senior ACAs") of Westchester County, bring this action against defendant, Local 456, International Brotherhood of Teamsters, AFL—CIO ("Local 456" or the "Union"), pursuant to the United States and New York State Constitutions, and various state and federal labor laws. Defendant has moved for summary judgment, and plaintiff has cross-moved for partial summary judgment. For the reasons stated below, defendant's motion is granted, and plaintiffs' cross motion is denied.

## BACKGROUND

### I. *Statement of Facts*

Local 456 is an organization of employees which exists for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of employment. (Def.Rule 56.1 Stmt. ¶ 1.)[1] Local 456 represents both public sector and private sector employees. (*Id.* at ¶ 4.) On June 18, 1993, Local 456 was recognized by the County of Westchester (the "County") as the collective bargaining representative for

---

1. Plaintiffs contend in their Rule 56.1 Statement that all factual allegations made in the amended complaint, except for those facts also contained in defendant's Lucyk affidavit, remain in dispute. (Pl.Rule 56.1 Stmt. at ¶ 1.) Plaintiffs also admit, for the purposes of these motions, that the facts contained in the Lucyk affidavit, except paragraphs 34 and 35, are true and not in dispute. (*Id.* at ¶ 2.)

Every statement in defendant's Rule 56.1 Statement is supported by a citation to Lucyk's affidavit, but no statement relies upon paragraphs 34 or 35 of Lucyk's affidavit. To the extent that defendant's Rule 56.1 Statement relies upon facts set forth in Lucyk's affidavit and admitted by plaintiffs, we will consider defendant's Rule 56.1 statement admitted by plaintiffs.

an overall bargaining unit composed of certain administrators, managers and professional employees, below the level of Deputy Commissioner, that were not represented by any other labor organization. (*Id.* at ¶ 5.) The Senior Assistant County Attorney title was included in the bargaining unit. (*Id.*)

Local 456 and Westchester County have negotiated three successive collective bargaining agreements which were effective for the two-year periods January 1, 1992 through December 31, 1993, January 1, 1994 through December 31, 1995 and January 1, 1996 through December 31, 2001. (Lucyk Aff. at ¶ 6.) In January 1997, a committee was formed to negotiate a collective bargaining agreement to succeed the agreement that had expired December 31, 1995. (*Id.*) The committee was composed of Brian Lucyk, an attorney retained by Local 456, Robert Villani, an Assistant County Attorney, Nicholas Longo, shop steward for the Environmental Engineering Department, Betsy Weir from the Personnel Department, Neil Squillanta from the Parks Department, and John Markiewicz from the Westchester County Medical Center. (*Id.* at ¶¶ 6–7.) The County was represented by Michael Wittenberg, Director of Labor Relations. (*Id.* at ¶ 7.)

On October 29, 1997, the County and Local 456 reached a Stipulation of Agreement that provided that the County would not seek to have any of the positions or persons in the bargaining unit designated as managerial or confidential. (*Id.* at ¶¶ 9–10.) The union members voted and approved the agreement, however, the Westchester County Board of Legislators did not approve it. (*Id.* at ¶ 10.)

On October 2, 1998, the County and Local 456 resumed negotiations. (*Id.* at ¶ 11.) At the first session Local 456 sought language in the collective bargaining agreement that would prevent the County from seeking to exclude titles from the bargaining unit. (*Id.* at ¶ 12.)

At the second negotiation session, the County proposed removing a number of titles from the bargaining unit. (*Id.* at ¶ 13.) The County wanted to exclude the Senior Assistant County Attorneys, the Assistants to the County Executive I and II, and the Coordinator of Veteran Affairs. Local 456 did not oppose exclusion of the Assistants to the County Executive and the Coordinator of Veteran Affairs. (*Id.* at ¶ 14.) Local 456 proposed that the Senior ACAs who wanted to remain in the bargaining unit should be allowed to transfer to non-senior ACA positions while retaining their higher wages. (*Id.* at ¶ 15.)

At the third negotiation session the County agreed to give the Senior ACAs, removed from the bargaining unit, the same percentage wage increases contained in the new collective bargaining agreement. (*Id.* at ¶ 16.) The parties tentatively agreed that if they were excluded, the Senior ACAs would receive contractual rates and would be allowed to transfer to the position of ACA by December 31, 1999, if they wished to remain in the bargaining unit. (*Id.* at ¶ 17.)

During subsequent negotiation sessions, the County continued to insist on the exclusion of the Senior ACAs. (*Id.* at ¶ 19.) Local 456 continued its efforts to retain the Senior ACAs in the bargaining unit. (*Id.* at ¶ 18.) In April, the County and Local 456 were at a deadlock. Faced with the possibility of an impasse, and the fact that the bargaining unit had not had a wage increase in the three and a half years since the prior agreement expired, the Union decided conditionally to accept the County's offer. (*Id.* at ¶ 23.)

On June 11, 1999, the County and the Union signed a Stipulation of Agreement. (*Id.* at ¶ 24.) The agreement provided for raises totaling 16½%; longevity increases of $600; elimination of the Senior ACA title, with a guarantee that Senior ACAs would receive the contractual raises and the ability to transfer to the title of ACA; and an agreement by the County not to seek to have any other persons or posi-

tions in the bargaining unit designated managerial or confidential until December 29, 2001. (*Id.* at ¶ 26.)

On June 14, 1999, the president of Local 456 sent a letter to the members of the bargaining unit, advising that a ratification vote would be taken on June 21, 1999 and including a copy of the Stipulation of Agreement. (*Id.* at ¶ 27.)

On June 21, 1999, the ratification vote was held. (*Id.* at ¶ 28.) Additional copies of the agreement were provided and the agreement was read to the membership. (*Id.* at ¶¶ 28–29.) All of the members' questions were answered. (*Id.* at ¶ 29.) The Union did not recommend the agreement to the membership and advised the membership that it was taking a neutral position toward the agreement. (*Id.*) All bargaining unit members were given the opportunity to vote and the membership voted in favor of the agreement. (*Id.* at ¶ 30.) On July 26, 1999, the Westchester County Board of Legislators ratified the agreement. (*Id.* at ¶ 31.)

The only request for information that the Union received from plaintiffs was by letter dated July 2, 1999. (*Id.* at ¶ 32.) The letter requested copies of documents pertaining to the negotiation of the collective bargaining agreement. (*Id.*) On July 30, 1999, plaintiffs filed a pre-action application in New York State Supreme Court to require the Union to preserve and produce documents pertaining to the negotiation of the agreement reached in 1999. (*Id.* at ¶ 33.) On January 4, 2000, the court ordered that the documents be preserved. (*Id.*)

Plaintiffs filed the complaint in this action on October 8, 1999. Upon leave from this Court, plaintiffs filed an amended complaint on May 11, 2000.

## II. *The Amended Complaint*

Plaintiffs' first cause of action alleges that they were deprived property rights without due process in violation of 42 U.S.C. § 1983 and the 14th Amendment of the United States Constitution. (Am. Complt.¶ 66.) Plaintiffs also bring an equal protection cause of action pursuant to 42 U.S.C. § 1983 and the 14th Amendment, alleging disparate treatment between plaintiffs and other members of the bargaining unit. (*Id.* at ¶¶ 75–76.)

Plaintiffs also bring a cause of action pursuant to New York State law for breach of the duty of fair representation. (*Id.* at ¶¶ 95–109.) Plaintiffs' other state law claims allege the deprivation of property rights without due process, (*id.* at ¶ 111); denial of equal protection, (*id.* at ¶ 114); deprivation of the right to join, form or participate in a labor organization, (*id.* at ¶ 117); and deprivation of the right to organize and bargain collectively through representatives of their own choosing, all in violation of the New York State Constitution. (*Id.* at ¶ 120.) Plaintiffs also allege a deprivation of their right to form, join and participate in any employee organization of their choosing in violation of the New York State Civil Service law. (*Id.* at ¶ 123.) The parties in this case have cross-moved for summary judgment on all of the claims listed above.

Plaintiffs also bring causes of action pursuant to the Labor Management Reporting and Disclosure Act (the "LMRDA"), 29 U.S.C. § 401 *et seq.* Plaintiffs allege that defendant limited their right to institute an action in any court or administrative agency in violation of § 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4). (Am. Complt.¶ 80.) Plaintiffs further allege that defendant discriminated against them with respect to their voting rights in violation of § 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). (Am.Complt.¶ 83.) Plaintiffs also allege a violation of § 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5), for deprivation of their right to procedural protections prior to expulsion from the collective bargaining unit. (Am.Complt.¶ 89.) Finally, plaintiffs bring a cause of action for failure to advise plaintiffs of the LMRDA's provisions, pursuant to section 105 of the

LMRDA, 29 U.S.C. § 415. (Am.Complt. ¶¶ 92–93.)

Defendant has moved for summary judgment on all of plaintiffs' claims pursuant to the LMRDA as well as on all of the other claims in plaintiffs' amended complaint, and plaintiffs seek partial summary judgment on their constitutional and state law claims.

## DISCUSSION

### I. *Summary Judgment Standards*

Under Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Agritronics Corp. v. National Dairy Herd Ass'n*, 914 F.Supp. 814, 820 (N.D.N.Y.1996). On cross-motions for summary judgment, the standard is the same as that for individual motions. In evaluating each motion, the court must look at the facts in the light most favorable to the non-moving party. *See Aviall, Inc. v. Ryder Sys., Inc.*, 913 F.Supp. 826, 828 (S.D.N.Y.1996), *aff'd*, 110 F.3d 892 (2d Cir.1997). "Simply because the parties have cross-moved, and therefore have implicitly agreed that no material issues of fact exist, does not mean that the court must join in that agreement and grant judgment as a matter of the law for one side or the other. The court may conclude that material issues of fact do exist and deny both motions." *Id.* (internal citation omitted).

### II. *Plaintiffs' Claims Pursuant to the United States Constitution*

Plaintiffs allege that the Union's actions resulted in the deprivation of their Fourteenth Amendment rights to due process and equal protection. Plaintiffs bring these constitutional claims against the Union pursuant to 42 U.S.C. § 1983.

Section 1983 allows an individual to bring suit against persons who, under color of state law, have caused him to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See, e.g., Rendell–Baker v. Kohn*, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420, (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right. *See Adickes*, 398 U.S. at 152, 90 S.Ct. 1598 ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.")

In general, a union is not a state actor. *See Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir.1998.) Although defendant is not a state actor, it may nonetheless be liable in an action under § 1983 because "private parties conspiring with [a state official are] acting under color of state law...." *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) To defeat defendant's motion for summary judgment, plaintiffs must present sufficient

evidence to support an inference that an improper conspiracy took place.

■ Plaintiffs' amended complaint fails to allege the existence of a conspiracy between the County and defendant Union in agreeing to remove the Senior ACAs from the collective bargaining unit. Further, plaintiffs put forth no evidence of any concert of action between the County and defendant beyond the negotiation of the collective bargaining agreement.

As discussed above, plaintiffs admit, for the purposes of this motion, that all but two paragraphs in Lucyk's affidavit are true. According to Lucyk's affidavit, the only evidence put forth in this case, the County wanted to remove several titles from the bargaining unit, including the Senior ACAs. (Lucyk Aff. ¶¶ 12–14.) The union representatives on the negotiating committee submitted a counter-offer concerning the removal of the Senior ACAs. (*Id.* at ¶ 15.) After months of negotiations, and repeated refusal by the County to keep Senior ACAs in the bargaining unit, the Union's negotiators feared an impasse. (*Id.* at ¶ 22.) Because the bargaining agreement had expired three and one-half years earlier, and the bargaining unit had not had a wage increase in that time, the Union decided that it would be in the best interest of its members to agree to the County's demands. (*Id.* at ¶ 23.)

Thus, defendant's only "collaboration" with the County arose from the negotiation of an agreement for the bargaining unit. Mere negotiation in the course of completing a collective bargaining agreement does not rise to the level of an improper conspiracy. In fact, the Union's role in relation to the County was adversarial. In *Philadelphia Fraternal Order of Correctional Officers v. Rendell,* No. 96 Civ. 1834, 1996 U.S. Dist. LEXIS 7621, at *26, 1996 WL 296538 (E.D.Pa. June 4, 1996), the court found that a union was not acting under the color of state law where it had an adversarial role in relation to the state by nature of the fact that it was the representative of city employees. Similarly, the Union here represents county employees, and thus must be considered to be an adversary of the county government. Therefore, defendant did not act under the color of state law, and cannot be subject to liability under section 1983. Summary judgment is granted to defendant on plaintiffs' federal constitutional claims, causes of action one and two in the amended complaint.

### III. *Plaintiffs' State Constitutional Claims*

Defendant also moves for summary judgment on plaintiffs' claims under the New York State Constitution. Plaintiffs allege that defendant violated their constitutional rights to due process, equal protection and to participate in a labor organization. Defendant argues that because the due process and equal protection clauses of the New York State Constitution do not apply to private conduct, *Montalvo v. Consolidated Edison Co.,* 92 A.D.2d 389, 393–94, 460 N.Y.S.2d 784, 787 (N.Y.App.Div. 1983), plaintiffs' claims must fail as a matter of law. This Court agrees.

The due process clause of the New York State Constitution provides, in relevant part: "No person shall be deprived of life, liberty or property without due process of law." N.Y. CONST., art. I, § 6. The state-action inquiry for due process claims has been different for purposes of the federal and New York State Constitutions. *See Sharrock v. Dell Buick–Cadillac,* 45 N.Y.2d 152, 159, 379 N.E.2d 1169, 1173, 408 N.Y.S.2d 39, 43 (1978).

New York courts have recognized a dichotomy between state action, which is subject to scrutiny under the New York State Constitution, and private action, which is insulated from such scrutiny. The factors courts have considered in making the state-action determination include the "source of authority for the private action," "whether the state is so entwined with the regulation of the private conduct as to constitute state activity," and "wheth-

er there has been a delegation of what has traditionally been a state function to a private person." *SHAD Alliance v. Smith Haven Mall*, 66 N.Y.2d 496, 505, 488 N.E.2d 1211, 1217, 498 N.Y.S.2d 99, 105 (1985) (citations omitted); *see also Sharrock*, 45 N.Y.2d at 157, 408 N.Y.S.2d at 45, 379 N.E.2d 1169 (state action exists where State delegates "one of the essential attributes of sovereignty"). Hence, the threshold inquiry under the New York State Constitution is essentially whether the state has been sufficiently implicated in the challenged activity to transform such activity into state action.

■ Here, the County played an adversarial role in the negotiation of the collective bargaining agreement with defendant. The County and the Union did not conspire, and the County did not delegate any authority to the Union. The Union's failure to "win" on every point in the negotiations, and its compromise with the County that resulted in the agreement, do not indicate that the County was so implicated in the activity so as to transform the Union's activity into state action. Therefore, even under New York's "more flexible State involvement requirement," plaintiffs' state constitutional due process claims fails for the same reasons their § 1983 claims fail. *See Sharrock*, 45 N.Y.2d at 160, 408 N.Y.S.2d at 44, 379 N.E.2d 1169.

■ The equal protection clause in the New York State Constitution, N.Y. CONST. art. I, § 11, is no broader than its federal counterpart, thus it has the same state action requirement as the federal equal protection clause. Therefore, plaintiffs' claim pursuant to the equal protection clause of the New York State Constitution also fails for lack of state action.

Plaintiffs' reliance upon *Brown v. State*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), to support their contention that state action is not required for a violation of state constitutional provisions, is misplaced. *Brown* merely stands

for the proposition that there exists a cause of action for damages resulting from violations of the equal protection clause of the New York State Constitution. *Id.* at 189–90. The claims for damages under the New York State Constitution that were sustained in *Brown* were against the state of New York. *See id.* Thus, the issue of state action was not raised. Therefore, *Brown* does not dictate a different result in this case and summary judgment on plaintiffs' New York State Constitutional claims for due process and equal protection is granted in favor of defendant.

Plaintiffs' tenth cause of action alleges a violation of their right to form, join or participate in a labor organization as guaranteed by the New York State Constitution. (Am.Complt.¶ 117.) Plaintiffs seek declaratory relief and compensatory damages for this alleged constitutional violation. (Am.Complt.¶ 118.) Plaintiffs' eleventh cause of action asserts that defendant's conduct constituted a "deprivation of plaintiffs' right to organize and bargain collectively through representatives of their own choosing in violation of the New York State Constitution." (*Id.* at ¶ 120.) Plaintiffs also seek declaratory relief and compensatory damages as relief for this cause of action. (Am.Complt. ¶ 121.)

Defendant and this Court have interpreted both of these claims as allegations of a violation of article 1, section 17, of the New York State Constitution,[2] which states in relevant part: "Employees shall have the right to organize and to bargain collectively through representatives of their choosing." N.Y. CONST. art. I, § 17. This provision is "only a guarantee in the form of a fundamental right, of something that both legislative policy and prevailing court decisions had previously recognized." *Domanick v. Triboro Coach Corp.*, 18 N.Y.S.2d 650, 652 (N.Y.Sup.Ct. 1940). Section 17 was "not intended to invalidate existing legislation which im-

---

**2.** Plaintiffs' briefs did not include a discussion of the merits of either of these claims.

posed a duty to bargain collectively with employees even though that obligation by reason of certain exemptions or exceptions was not in all respects coextensive with the rights of labor." *Trustees of Columbia Univ. v. Herzog*, 269 A.D. 24, 30, 53 N.Y.S.2d 617, 622 (1945).

On its face, section 17 does not create a cause of action for damages. *See* N.Y. CONST. art. I, § 17. Further, this Court has failed to locate, and plaintiffs have failed to point to, any case law supporting plaintiffs' claim for compensatory damages arising from the alleged violation of their right to participate in a union or bargain collectively.

▉ Further, plaintiffs have not articulated how the Union's negotiation of a collective bargaining agreement, which was approved by a vote of the entire membership, violated their right to organize or bargain collectively. The Union, as the representative of its membership, and the employer, have the right to negotiate to redefine the bargaining unit. Plaintiffs have put forth no evidence creating a material issue of fact concerning these causes of action. When faced with a motion for summary judgment, the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that "its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). Given plaintiffs' utter lack of argument or evidence in support of these two state constitutional claims, and this Court's inability to locate any cases in which the plaintiffs were afforded compensatory or declaratory relief for violation of the relevant portion of section 17, summary judgment is granted to defendant on plaintiff's tenth and eleventh causes of action.

### IV. *Breach of Duty of Fair Representation*

Plaintiffs allege that the Union breached its duty of fair representation by eliminating plaintiffs from the bargaining unit. In *Vaca v. Sipes*, the Supreme Court established the standard for determining when the duty of fair representation is violated. 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). According to the Court, such a breach "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.*

Although the state and its political subdivisions, including the County, are excluded from the definition of "employer" contained in section 2 of the National Labor Relations Act, 29 U.S.C. § 152(2), New York courts have recognized a similar duty of fair representation on the part of public sector unions predicated on their role as exclusive bargaining representatives. *See Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York*, 64 N.Y.2d 188, 196, 485 N.Y.S.2d 227, 474 N.E.2d 587 (1984). The Public Employees' Fair Employment Act confirms the duty of fair representation imposed upon public sector unions. CSL § 209a(2).

Plaintiffs allege, but do not support with any evidence, that members of the Union, including the negotiating team, may have acted out of self-interest because they were under investigation. (Pls. Mem. at 20.) Plaintiffs also allege that members of the negotiating team for the Union acted in an arbitrary and discriminatory manner because some of the members had jobs that were more managerial than those of plaintiffs, but retained their position in the bargaining unit while eliminating plaintiffs' job titles. (*Id.*)

▉ However, it has long been established that, absent improper intent, a union does not breach the duty of fair representation by entering into an agreement which favors some employees over others. *See In the Matter of Patrick T. Maddock*, 29 N.Y. P.E.R.B. ¶ 4580 (1996); *In the Matter of Joanne Rooney*, 20 N.Y.P.E.R.B. ¶ 3062 (1987); *In the Matter of Obdulio Brignoni, Jr.*, 32 N.Y.P.E.R.B. ¶ 3020 (1999). In *Civil Service Bar Asso-*

*ciation*, the union filed a grievance on behalf of all attorneys affected after the city hired an associate attorney at a salary $3,000 higher than the stated minimum salary for that position. 64 N.Y.2d at 188–89, 485 N.Y.S.2d 227, 474 N.E.2d 587. After the grievance was denied, the union took the matter to arbitration, where the arbitrator ruled in favor of the union and ordered the city to increase all minimum salaries. *Id.* While the city's appeal was pending, settlement negotiations ensued between the city and the union. *Id.* at 189, 485 N.Y.S.2d 227, 474 N.E.2d 587. They entered a settlement which was approved by the union's membership and board of directors. *Id.* A group of attorneys sued the union, alleging that they would have received more favorable benefits under the original arbitrator award than they would under the settlement. *Id.* The court held that:

> [w]here the union undertakes a good faith balancing of divergent interests of its membership and chooses to forgo benefits which may be gained for one class of employees in exchange for benefits to other employees, such accommodation does not, of necessity, violate the union's duty of fair representation. A union's settlement of a group salary grievance cannot be viewed in isolation from its role as collective negotiating representative for the union as a whole.

*Id.* at 197–98, 485 N.Y.S.2d 227, 474 N.E.2d 587 (citations omitted).

Here, defendant was negotiating the collective bargaining agreement to benefit the entire bargaining unit because its members had not received a wage increase in more than three years. Local 456 made several attempts to retain plaintiffs' title in the bargaining unit after the County submitted the proposal to remove plaintiffs from the bargaining unit. (Lucyk Aff. ¶¶ 9–20.) Like the union in *Civil Service Bar Association*, Local 456 engaged in a balancing of the interests of its membership and decided that it would be best for the membership as a whole to avoid an impasse. (*Id.* at ¶¶ 22–23.) Further, plaintiffs have put forth no evidence to support their allegations that the Union negotiators were engaged in self-dealing. Conclusory and vague allegations are too speculative to support a claim for breach of the duty of fair representation. *See O'Riordan v. Suffolk Chapter, Local No. 852, Civil Serv. Employees Ass'n,* 95 A.D.2d 800, 463 N.Y.S.2d 519 (1983). In *Badman v. Civil Service Employees Ass'n,* the court stated:

> A plaintiff opposing a motion for summary judgment must lay bare his proof in evidentiary form and raise an issue of fact sufficient to send to the jury. He cannot rely upon the hope that somehow, on cross-examination of the defendant's witnesses, he can establish his case. Here, the affidavits submitted by the defendant, [ ], in support of the motion for summary judgment, contain evidentiary facts showing that it acted in good faith. In opposition to the motion, plaintiff has failed to come forward with facts sufficient to defeat the motion for summary judgment. The sole affidavit in opposition was sworn to by plaintiff's attorney and it contains no facts either disputing the matters set forth in the defendant's affidavits or supporting plaintiff's allegation that the defendant breached its duty of fair representation.

91 A.D.2d 858, 858–59, 458 N.Y.S.2d 385, 385 (1982).

■ Here, just as the plaintiff in *Badman* failed to put forth any evidence in support of his allegations, plaintiffs only put forth the affidavit of their attorney in support of their allegations that Local 456 breached its duty of fair representation, and this affidavit admitted the statements in Lucyk's affidavit, with a few irrelevant exceptions. (Lisa F. Colin Aff.) Without any evidence supporting plaintiffs' allegations of defendant's self-dealing, these allegations are insufficient to avoid summary judgment for defendant. Thus, plaintiffs have failed to raise a material issue of fact on their breach of duty of fair representa-

tion claim, and summary judgment is granted to defendant on this claim.

## V. *New York State Civil Service Law*

Plaintiffs' twelfth cause of action alleges that "[t]he conduct of the Local 456 against the plaintiffs constituted a deprivation of plaintiffs' right to form, join and participate in any employee organization of their own choosing in violation of New York State Civil Service Law." (Am. Complt.¶ 123.) Plaintiffs argue that the only way that the County could have removed them from the bargaining unit was by applying to the New York State Public Employment Relations Board ("PERB") to have their job titles deemed "confidential" or "managerial."

It is unclear which section of the New York State Civil Service Law plaintiffs allege has been violated. Defendant asserts that under section 204, the Union is authorized to remove job titles from a bargaining unit pursuant to agreement with the employer. However, plaintiffs assert that section 204 is not at issue in this case, but under sections 201(7)(a) and 214, plaintiffs could only be excluded from the bargaining unit if the PERB designated them as "managerial" or "confidential."

■■■ Although an employee may be designated as "managerial" or "confidential" only upon application of the employer to the PERB, *see* N.Y. Civil Serv.Law § 201(7)(a); *In the Matter of Lippman,* 263 A.D.2d 891, 694 N.Y.S.2d 510 (1999), public employers and public employee unions have the right to alter by agreement the composition of their bargaining units. *See In the Matter of Ramapo Police Benevolent Ass'n,* 33 N.Y.P.E.R.B. ¶ 4504

(2000) (recognizing the right of public employers and public employee unions to alter by agreement the composition of their bargaining units); *In the Matter of Onondaga–Cortland–Madison BOCES Fed'n of Teachers,* 25 N.Y.P.E.R.B. ¶ 3044 n. 7 (1992) (noting that if the bargaining unit had been fashioned by agreement between the parties, the administrative law judge may have reached a different conclusion as to whether the union's demand to alter the bargaining unit that had been certified by the PERB violated its bargaining obligation).[3]

■■■ Here, plaintiffs were not designated "managerial" or "confidential," but their job titles were removed, upon agreement between the Union and the County and with the approval of the Union membership, from the bargaining unit. Because the Union and a public employer may agree upon the composition of the bargaining unit, defendant did not violate the Civil Service Law by negotiating a collective bargaining agreement that removed plaintiffs' title from the bargaining unit. Therefore, defendant is granted summary judgment on plaintiffs' twelfth cause of action.

## VI. *Labor Management Reporting and Disclosure Act*

### A. *Limitation of Right to Sue*

Plaintiffs allege that, in violation of section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), defendant deprived plaintiffs of the opportunity to institute an action in court or before an administrative agency. (Am.Complt.¶ 80.) Section 101(a)(4) of the LMRDA states in relevant part: "[n]o la-

---

**3.** We also note that the PERB's web site, in the "Frequently Asked Questions About Representation," asks the following questions and gives the following answers:

Q: What is a bargaining unit?
A. A bargaining unit is the grouping of employees for the purpose of collective negotiations. *The employer and union may agree upon the composition of such unit.* If they cannot, PERB must determine the

most appropriate bargaining unit. Section 207 of the Act defines the criteria for determining the most appropriate unit.
Q: Do unit employees get to vote on what bargaining unit they are included in?
A: No. *Inclusion of titles in a bargaining unit is a determination to be made by the union and the employer* or PERB.
*See* www.perb.state.ny.us/Faq.asp (emphasis added).

bor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency...." 29 U.S.C. § 411(a)(4).

 Plaintiffs base their allegations under section 101(a)(4) on their assertion that in order to remove plaintiffs from the collective bargaining unit, the County was required to request that the PERB designate the title of Senior ACA as "managerial" or confidential. However, as discussed above, the County did not designate plaintiffs' job title as "managerial" or "confidential." The County merely agreed with the Union to alter the composition of the bargaining unit. In so doing, the Union and the County agreed to exclude plaintiffs from the bargaining unit. The Union and the County may agree as to the composition of the bargaining unit, *see* Section V., *supra*, therefore the LMRDA was not violated by the County's, or the Union's, failure to have plaintiffs' job title designated "managerial" or "confidential."

Further, plaintiffs have not been prevented from commencing any litigation. Plaintiffs have chosen to seek resolution of their grievances in this court and in New York state court. According to the undisputed facts, plaintiffs have failed to state a claim under section 101(a)(4) of the LMRDA, and summary judgment for defendant on this claim is granted.

## B. *Denial of Equal Protection With Respect to Voting Rights*

Plaintiffs also allege that defendant's conduct constituted discrimination against plaintiffs and in favor of others with respect to voting rights, in violation of section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). (Am.Complt.¶ 83.) Plaintiffs assert that Local 456 "arbitrarily and discriminatorily [sic] singled out a group of its members for removal and then declined to insist on a PERB hearing but instead consent[ed] to the removal language into a collective bargaining agreement ...," and this conduct constitutes a violation of

LMRDA § 101(a)(1) even though a subsequent vote of the membership ratified the agreement. (Pls.Mem. at 14.)

 As a matter of law, plaintiffs have failed to state a claim under LMRDA § 101(a)(1). In *Calhoon v. Harvey*, 379 U.S. 134, 138, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), the Supreme Court held that section 101(a)(1) "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." The Second Circuit has stated "[t]o be viable, a claim under § 101(a)(1) must therefore allege the denial of some privilege or right to vote which the union has granted to others." *Members for A Better Union v. Bevona*, 152 F.3d 58, 65 (2d Cir.1998).

Here, plaintiffs admit that every member of the bargaining unit received a letter from the president of the Union advising them of the ratification vote for the collective bargaining agreement, and attaching a copy of the agreement. (Lucyk Aff. ¶ 27.) Additional copies of the agreement were provided at the meeting, and all questions about the agreement were answered. (*Id.* at ¶¶ 28–29.) All members of the bargaining unit, including plaintiffs, were given an opportunity to vote on the agreement. (*Id.* at ¶ 30.) Because plaintiffs were given the same opportunity as all the other members of the bargaining unit to ask questions about and vote on the agreement, plaintiffs cannot state a claim for a violation of § 101(a)(1). Assuming, *arguendo*, that defendant did "arbitrarily and discriminatorily [sic] single[ ] out a group of its members for removal," plaintiffs were not denied any right to vote that was granted to others. Therefore, we grant summary judgment to defendant on plaintiffs' fourth cause of action.

## C. *Procedural Protections of the LMRDA*

Plaintiffs' fifth cause of action alleges that defendant's conduct constituted "a deprivation of plaintiffs' right to procedural

protections prior to expulsion in violation of § 101(a)(5) of the LMRDA, 29 U.S.C. § 411(a)(5)." (Am.Complt.¶ 89.) Section 101(a)(5) states in relevant part:

> [n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

The procedural protections of section 101(a)(5) apply only to disciplinary actions that affect "membership rights." *Finnegan v. Leu*, 456 U.S. 431, 435–36, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). Union action affecting a membership right constitutes "discipline" for the purpose of triggering section 101(a)(5) where that action is "imposed as a sentence on an individual by a union in order to punish a violation of union rules." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 92 n. 15, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989). Discipline is retaliatory in nature, *see Finnegan*, 456 U.S. at 436, 102 S.Ct. 1867, and is retrospective in nature. *See United States v. Int'l Bhd. of Teamsters*, 120 F.3d 341, 348–49 (2d Cir. 1997). In *Miller v. Holden*, 535 F.2d 912, 914–15 (5th Cir.1976), the court construed "discipline" to "conform to the essential character of the specifically enumerated types of discipline: fine, expulsion, and suspension." The court focused on the union's motivation, and stated that "union action which adversely affects a member is discipline only when (1) it is undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership, and (2) it directly penalizes him in a way which separates him from comparable members in good standing." *Id.* at 914–15.

Defendant argues that although expulsion is a form of discipline under section 101(a)(5), plaintiffs have failed to demonstrate that there was a punitive aspect to their removal from the bargaining unit. (Def. Reply Mem. at 19.) The undisputed facts here show that the County, and not the Union, suggested and insisted upon the removal of plaintiff's job titles from the bargaining unit. (Am.Complt.¶¶ 32, 34.) The complaint in *Breininger* was deficient because it described only "personal vendettas" instead of actions taken by the Union as an organizational entity. 493 U.S. at 94, 110 S.Ct. 424. Like the plaintiffs in *Breininger*, plaintiffs here allege that the Union negotiators were self-dealing and protecting their own job titles. (*Id.* at ¶ 102.) Even if plaintiffs put forth evidence in support of these allegations, which they have failed to do, the negotiators' personal interests do not demonstrate that the Union, as an organizational entity, intended to punish plaintiffs by agreeing to remove them from the bargaining unit.

■ Contrary to their allegations, plaintiffs were not expelled from the Union. Plaintiffs' job titles were removed from the bargaining unit. According to defendant, the membership of plaintiffs in Local 456 was suspended for nonpayment of dues. (Lucyk Aff. ¶ 34.) Although plaintiffs dispute this fact, (Pls. Rule 56.1 Stmt. § 3), they put forth no evidence to show that plaintiffs were expelled. Even if plaintiffs were to put forth evidence of expulsion, it would be immaterial to defendant's conduct at issue in this case, the agreement to remove plaintiffs from the bargaining unit. Therefore, defendant's motion for summary judgment is granted as to plaintiffs' fifth cause of action.

### D. *Failure to Advise of LMRDA Provisions*

Plaintiffs allege that Local 456 failed to inform plaintiffs of their rights under the LMRDA, in violation of section 105 of the LMRDA, 29 U.S.C. § 415. (Am.Complt. ¶¶ 92–93.) Section 105 states in its entirety: "Every labor organization shall inform

its members concerning the provisions of this chapter." 29 U.S.C. § 415.

Plaintiffs assert that on July 2, 1999, plaintiffs sent a letter to Local 456 seeking assistance, but received no response from the Union. (Am.Complt.¶ 54.) The letter requested "copies of any and all documents ... relating to the negotiations from January 1, 1998 to present which ultimately resulted in the [ ] Stipulation of Agreement." (Lucyk Aff., Ex. D.) At no time after the approval of the collective bargaining agreement did Local 456 "contact, consult, advise, recommend or otherwise inform plaintiffs of their rights and remedies." (*Id.* at ¶ 55.) On July 30, 1999, plaintiffs filed, by order to show cause, a pre-action application in state court requiring Local 456 to preserve and/or disclose any records regarding the negotiations leading up to the execution of the new collective bargaining agreement. (*Id.* at ¶ 56.) Local 456 submitted affidavits and legal argument to oppose plaintiffs' efforts in state court. (*Id.* at ¶ 57.) By Order dated January 4, 2000, the New York State Supreme Court ordered that the documents be preserved, but did not order production. (Lucyk Aff. ¶ 33, Ex. E.)

Although the case law interpreting section 105 is limited, the provision is clear on its face. *See Thomas v. Grand Lodge of Int'l Ass'n of Machinists and Aerospace Workers,* 201 F.3d 517, 521 (4th Cir.2000). In *Thomas,* the union informed its membership of the LMRDA's provisions after the law was enacted in 1959, but had not done so since. *Id.* at 518. The court found a violation of section 105 of the LMRDA and, without deciding how notice of the LMRDA need be given, suggested that "[e]ffective notice thus requires at a minimum that each individual, soon after obtaining membership, be informed about the provisions of the LMRDA." *Id.* at 521.

Other courts have required that the plaintiffs bringing a claim pursuant to section 105 of the LMRDA first request that the union comply with the law by apprising the member of the provisions of the

LMRDA. *See Stelling v. International Bhd. of Elec. Workers Local Union,* 587 F.2d 1379, 1390–91 (9th Cir.1978); *Broomer v. Schultz,* 239 F.Supp. 699, 705 (E.D.Pa.1965), *aff'd* 356 F.2d 984 (3d Cir. 1966). Here, it is undisputed that plaintiffs sent a letter to defendant requesting copies of documents relating to the negotiation of the new collective bargaining agreement. (Lucyk Aff., Ex. D.) Plaintiffs never requested information about the LMRDA's provisions, but instead immediately sought judicial relief, just as the plaintiffs in *Stelling* had. *See* 587 F.2d at 1391 (noting that the plaintiffs failed to raise the issue with the union, and immediately sought judicial relief, while affirming district court's dismissal of section 105 claim). Plaintiffs cannot assume that their request for documents relating to the negotiation of the collective bargaining agreement would result in the Union providing information on the LMRDA. Plaintiffs have put forth no evidence that defendant failed to advise them of their rights under the LMRDA when they became members of the Union.

Plaintiffs argue that defendant failed to "advise and assist them in seeking to protect their rights." (Pls.Mem. at 17.) However, defendant has no duty under section 105 to advise or assist members of the Union. Defendant need only provide its members with notice of the provisions of the LMRDA. *See Thomas,* 201 F.3d at 521. On the basis of the undisputed facts, plaintiffs have failed to state a claim under section 105 of the LMRDA.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted in full and plaintiffs' motion for partial summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

SO ORDERED.